UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Giuseppe Santarossa,            Case No. 3:22-cv-802

        Plaintiff,

v.                                        MEMORANDUM OPINION
                                             AND ORDER

P & A Industries, Inc.,

        Defendant.

## I. INTRODUCTION

Defendant P & A Industries, Inc., filed a motion for summary judgment on all claims alleged by Plaintiff Giuseppe Santarossa. (Doc. No. 25). Santarossa filed a brief in opposition, (Doc. No. 26), and Defendant filed a brief in reply. (Doc. No. 27). For the reasons stated below, I grant Defendant's motion.

## II. BACKGROUND

Santarossa was born in Asmara, Ethiopia to Italian and Ethiopian parents. (Doc. No. 23 at 10, 13). He began working for Defendant in 1992 through a temp service before training to be a welder beginning in 1996. (*Id.* at 23-24). Santarossa continued working for Defendant until 1999, when he was terminated for violating Defendant's attendance policy. (*Id.* at 24-30). He was employed at a variety of other jobs until November 2019, when he returned to work with Defendant. (*Id.* at 42-44).

Upon his return, Santarossa operated automatic presses in the production operations sector. (*Id.* at 45-46, 56). Ryan Kaufman was Santarossa's supervisor on the second shift. (*Id.* at 56-57).

According to Santarossa, Kaufman "had issues with" him within a matter of days after Santarossa began work. (*Id.* at 57). Santarossa disliked Kaufman's style of communication and believed Kaufman was treating him differently, complaining about Santarossa's work area and intentionally placing him on jobs he was not yet ready for. (*Id.* at 57-60); (*see also id.* at 65) (testifying Kaufman "[a]lways [had] an attitude with" him). Santarossa also claimed Kaufman would make false accusations against him or attempt to get other employees to spread those accusations, though Santarossa was only able to remember one specific incident in which Kaufman allegedly told a female employee to file a sexual harassment complaint against Santarossa.[1] (*Id.* at 61-64).

This was not the first time a P & A employee complained about Kaufman. P & A employees undergo periodic job performance evaluations. Kaufman's 2019 performance appraisal, completed on October 22, 2019, recorded that: (1) employees in several other departments complained that Kaufman acted with favoritism toward some employees over others; (2) Kaufman talked down to people; (3) Defendant's HR department received weekly complaints about Kaufman's leadership style; and (4) Kaufman often failed to separate his personal and professional lives. (Doc. No. 26-1 at 6-8).

Santarossa testified he contacted Jennifer Warnecke, Defendant's human resources manager, within a few weeks after he returned to work in November 2019 to raise concerns about Kaufman's treatment of him, though he acknowledged he did not indicate to Warnecke he believed Kaufman was treating him differently because of his race or place of national origin. (*Id.* at 76-78). Santarossa stated he wrote at least three letters to Warnecke after that initial report, but he again did

---

[1] Santarossa testified a co-worker, Mario Hunnicutt, told him Kaufman attempted to get the female co-worker to make a false sexual harassment complaint about Santarossa some time between November 2019 and March 2020, when Defendant's facility closed due to Ohio's Covid-19 shutdown. (Doc. No. 23 at 69-72). Santarossa was unable to remember any other details.

2

not specifically accuse Kaufman of discriminating against him because of his race or national origin. (*Id.* at 80-82).

On November 25, 2019, Warnecke emailed Matt Bowman, the plant manager, to relay concerns Santarossa raised after an incident in which Kaufman accused Santarossa of going to the bathroom too often and told Santarossa not to talk to a maintenance person who responded to a call for assistance at Santarossa's worksite. (Doc. No. 25-1 at 83). Warnecke told Bowman that Santarossa reported Kaufman was "not friendly at all." (*Id.*).

On two or three occasions during his term of employment, Santarossa claims Kaufman would drop or throw an item on the ground and then instruct Santarossa to come and pick it up. (Doc. No. 23 at 86-88). According to Santarossa, other employees were around when Kaufman directed Santarossa pick up the items, but Kaufman did not instruct any other employees to pick up the items. (*Id.* at 87-88). Santarossa believed that Kaufman's attitude and communication style, including referring to Santarossa and other African American employees as "bros," evidenced that Kaufman considered himself to be superior to minorities. (*See id.* at 91-96).

A few weeks after Santarossa was reemployed, the plant had a Thanksgiving lunch for employees. Santarossa asserts Kaufman walked over near him and said he did not think there was enough food for everyone. (*Id.* at 97-98). Kaufman did not reference Santarossa's race or place of national origin, but Santarossa interpreted Kaufman's statement as being directed at him, so he left work and went home. (*Id.*). Santarossa testified he probably told Warnecke that he believed Kaufman's actions were racially motivated but could not recall any details. (*Id.* at 98-100).

Santarossa received five performance evaluations during his second term of employment. Employees are rated on 22 competency areas on a scale from 1 (the lowest) to 5 (the highest). Santarossa's first review was completed on December 4, 2019, by a manager named Mark Nickols. Santarossa received an average score of 2.27, and Nickols noted Santarossa lacked consistency in his

3

work and needed to improve his ability to work as a member within a group. (Doc. No. 26-2 at 3-8).

Kaufman conducted Santarossa's 60- and 90-day evaluations and gave him average scores of 2.55 and 2.73. (*Id.* at 9-20). Kaufman did not make any comments in the 60-day review but flagged concerns with Santarossa's ability to work with others as part of a team in his 90-day review. (*See id.* at 17-19). A manager named Richard Dimond completed Santarossa's next review on March 7, 2020, while Nickols completed his fifth review on April 10, 2020. Both reviewers gave Santarossa an average score of 2.32. (*Id.* at 21-32).

Santarossa testified he disagreed with all of his performance evaluations, claiming they were based on false allegations about the quality of his work. (*See* Doc. No. 23 at 103-10); (*see also id.* at 105-07) (asserting the reviews completed by other managers contained false information supplied by Kaufman). The only specific incident Santarossa was able to recall was when Kaufman allegedly falsely reported that Santarossa had arrived late to his worksite. (*Id.* at 107-09). While Santarossa testified this false report made its way into his performance evaluation, none of his five evaluations reflect that Santarossa was late to his worksite. (Doc. No. 26-2 at 4, 10, 16, 22, and 28).

In March 2020, Santarossa was laid off after Defendant's plant shut down due to the Ohio Department of Health's Covid-19 Stay At Home order. (Doc. No. 23 at 110-11). Prior to the layoff, Santarossa had been reassigned to first shift for training. (*Id.* at 111-12). He requested to stay on first shift when the plant later reopened and he was called back to work, in order to avoid working under Kaufman again, but Santarossa was told there were not any positions available and he would need to return to second shift. (*Id.* at 112-16).

A few months later, on July 12, 2020, Santarossa wrote an email to Warnecke complaining about Kaufman's behavior. He wrote, in part, that "Mr. Ryan Kaufman's hate toward minorities will not stop as he continues his harassment again and again toward me and other minorities." (*Id.* at

4

120) (quotation marks omitted). Santarossa testified he included this statement in his email because he recalled hearing that "the minorities that worked there . . . all quit . . . [a]nd they all blame [Kaufman]." (*Id.* at 121). According to Santarossa, Mario Hunnicutt, a coworker, filed a lawsuit against Defendant for racial discrimination, while a white female coworker allegedly was fired because of "her association with minorities." (*Id.* at 121-22). (*See also id.* at 122-24).

Santarossa wrote a second email on July 14, 2020. In that email, he alleged Defendant continued to require him to work under Kaufman's supervision as part of a plan leading to Santarossa's eventual termination. (*Id.* at 130). Santarossa testified he suspected this was true because he had complained about Kaufman's behavior in the past and no one in human resources or upper management took any action. (*Id.* at 130-34).

Santarossa did not report to work on July 10, 2020, (Doc. No. 25-3 at 1), and he did not return to work after sending his July 12 email. (Doc. No. 23 at 125). Santarossa's failure to attend work on July 10 or to provide a valid excuse for his absence caused him to exceed the permissible number of attendance points under Defendant's policy, and his employment was terminated as of that date. (Doc. No. 24 at 107-08; Doc. No. 25-3 at 1).

On May 17, 2022, Santarossa initiated this lawsuit after receiving a right-to-sue letter from the Equal Employment Opportunity Commission. (Doc. No. 1). He asserts claims under federal and Ohio law for race and national origin discrimination, as well as for retaliation.

### III.    STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is

genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

#### A. RACE AND NATIONAL ORIGIN DISCRIMINATION

In Counts I and III, Santarossa asserts Defendant discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, and he asserts the same claims under Ohio law in Counts II and IV. Both federal and Ohio law prohibit an employer from discriminating "against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). *See also* Ohio Rev. Code § 4112.02(A) (making it unlawful for an employer "to discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" because of the person's race or national origin). Santarossa's "federal and state claims may be analyzed together . . . because 'Ohio's requirements are the same as under federal law.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)).

The parties disagree as to the nature of Santarossa's discrimination claims. Defendant analyzed Santarossa's claims as hostile work environment claims. (Doc. No. 25 at 18-21). As Defendant notes, (Doc. No. 27 at 3-4), Santarossa alleged in the Complaint that "Defendant created working conditions that were so intolerable for Santarossa with the intention of forcing him to quit." (Doc. No. 1 at 11). (*See also id.* at 12-14). But Santarossa disavows any hostile work environment claim, asserting Defendant "incorrectly argues the elements of a hostile work

6

environment claim, as opposed to a discrimination claim which was raised by Santarossa." (Doc. No. 26 at 16). I accept Santarossa's representation that he does not bring a claim for a hostile work environment and consider his claims as ones for constructive discharge. *Cf. Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (upholding summary judgment in favor of defendant on a claim for a racially hostile work environment where plaintiff did not address that claim in opposition to defendant's summary judgment motion).

A plaintiff may prove a discrimination claim through either direct or indirect evidence. Santarossa has not identified any direct evidence of discrimination and therefore the familiar *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Santarossa may establish a prima facie case of discrimination by showing: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by, or treated less favorably than, a person outside of the protected class. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001), and *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

Santarossa argued in his opposition brief that, "[a]s Defendant failed to argue the prima facie elements of Santarossa's discrimination claims, he has established the same." (Doc. No. 26 at 17). But "[i]t is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell*, 964 F.2d at 582 (citing *McDonnell Douglas*, 411 U.S. at 802, and *Tex. Dep't of Cmty. Aff. v. Burdine*, 450 U.S. 248, 256 (1981)). *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) ("Generally speaking, a plaintiff in a race discrimination action 'has the burden of proving by a preponderance of the evidence a *prima facie* case.'" (quoting *Burdine*, 450 U.S. at 252-53)); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012)

7

("'The burden is first on the plaintiff to demonstrate a prima facie case of race discrimination.'") (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Santarossa fails to establish his prima facie case because, among other things, he has not pointed to any evidence that he was replaced by or treated less favorably than an employee outside of his protected class. In order to show "a comparable non-protected person was treated better," Santarossa "must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell*, 964 F.2d at 582-83 (citations and internal quotation marks omitted). To be considered similarly situated, "the individuals with whom [Santarossa] seeks to compare his[] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 583.

Santarossa did not identify any individual who was allegedly treated more favorably than him. Therefore, he has not established a prima facie case of race or national origin discrimination.

Santarossa contends I still may conclude there is a genuine dispute of material fact regarding his discrimination claims pursuant to the cat's paw theory of liability. (Doc. No. 26 at 17-20). According to Santarossa, Defendant may be held liable because it did not sufficiently investigate his complaints about Kaufman, leading to his constructive discharge. (*Id.* at 20).

In a "cat's paw" case, a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). An employer is liable under this theory "[(1)] if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an

8

adverse employment action, and [(2)] if that act is a proximate cause of the ultimate employment action." *Id.* at 422 (emphasis in original).

The Sixth Circuit has held an employee may rely on a constructive discharge claim to establish the required adverse employment action. *Laster*, 746 F.3d at 727. "To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Id.* at 727–28 (citations omitted). Among the ways a plaintiff may establish "intolerable working conditions" is by showing there was "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* at 728.

While Santarossa asserts Kaufman harassed and attempted to humiliate him, (Doc. No. 26 at 18-19), he does not point to any evidence that Kaufman's conduct was intended to force Santarossa to quit. *See Laster*, 746 F.3d at 728 (noting plaintiff "has not presented any evidence that this behavior was undertaken with the specific intention of forcing Plaintiff to quit"). Nor does he cite evidence that Defendant's allegedly insufficient investigation of his complaints was designed to lead to his resignation. Because he fails to raise a genuine dispute of material fact as to whether he was constructively discharged, Defendant cannot be held liable under the cat's paw theory.

Finally, relying on *Ellis v. Jungle Jim's Market, Inc.*, 44 N.E.3d 1034 (Ohio Ct. App. 2015), Santarossa argues Defendant may be held liable for discrimination because it ratified Kaufman's conduct by failing to take "prompt remedial action." (Doc. No. 26 at 20). But *Ellis* does not help Santarossa. In that case, the plaintiff sought to hold her employer vicariously liable for a hostile work environment stemming from her supervisor's sexual harassment. *See Ellis*, 44 N.E.3d at 1044-52. Santarossa represents he is not pursuing a hostile work environment claim, (Doc. No. 26 at 16-17), so *Ellis* is inapposite.

9

I grant summary judgment in Defendant's favor on each of Santarossa's discrimination claims.

**B.      TITLE VII RETALIATION**

Title VII also prohibits employers from retaliating again an employee who has raised complaints of discriminatory treatment. *See* 42 U.S.C. § 2000-3(a). *See also* Ohio Rev. Code § 4112.02(I). "The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster*, 746 F.3d at 730.

Retaliation claims based upon circumstantial evidence also are analyzed through the *McDonnell Douglas* framework. A plaintiff first "must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citation omitted).

Santarossa contends he "established that P&A took adverse action against him by forcing him to keep working with his harasser and by constructively discharging him." (Doc. No. 26 at 23). Even if I were to assume for the sake of argument that was true, Santarossa has not identified a causal connection between his complaints about Kaufman and Defendant's alleged failure "to take prompt remedial action." (*Id.*). While a plaintiff's burden at the prima facie stage is "minimal," Santarossa still is required to "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (citations and internal quotation marks omitted). His assertion that Defendant did not investigate his complaints about Kaufman does not support an inference that Defendant did not investigate <u>because</u> he complained about Kaufman.

10

While it is true Santarossa does not need to "prove" every element of his prima facie case, (Doc. No. 26 at 23), he still bears the burden to marshal evidence to show there is a genuine dispute of material fact as to each element of the prima face case. He did not do so, and therefore Defendant is entitled to summary judgment on his retaliation claims.

## V.    CONCLUSION

For the reasons stated above, I grant Defendant's motion for summary judgment on all claims asserted by Plaintiff Giuseppe Santarossa. (Doc. No. 25).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge